IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**VINCENT PATRICK SHERLEY,**

        **Petitioner,**

v.                                                    **Case No. 2:16cv61**

                                                            **(Judge Bailey)**

**JENNIFER SAAD,**

        **Respondent.**

**REPORT AND RECOMMENDATION**

On July 20, 2016, *pro se* Petitioner, Vincent Patrick Sherley ("Petitioner"), an inmate at FCI Gilmer, filed a Habeas Corpus petition pursuant to 28 U.S.C. § 2241 seeking additional credit against his sentence. ECF No. 1. That same day, the Court issued a Notice of Deficient Pleading. ECF No. 3. On July 29, 2016, Petitioner paid the required five-dollar filing fee. ECF No. 5. On August 8, 2016, Petitioner filed a Motion to Supplement Petition for Writ of Habeas Corpus. ECF No. 6. The undersigned granted Petitioner's Motion to Supplement on August 9, 2016, and directed the Clerk of the Court to file ECF No. 1 found in case number 5:16cv107 as a brief in support of the instant petition. ECF No. 7.

On August 25, 2016, the undersigned conducted a preliminary review of the petition and found that summary dismissal of the same was not warranted. ECF No. 12. Accordingly, an Order to Show Cause was issued against Respondent. Id. On

1

September 20, 2016, Jennifer Saad ("Respondent") filed a Motion to Dismiss or for Summary Judgment and Response to Order to Show Cause. ECF No. 19. On September 21, 2016, the undersigned issued a Roseboro notice requiring Petitioner to reply to Respondent's motion within twenty-one days. ECF No. 22. On October 17, 2016, Petitioner filed his Response to Respondent's Motion to Dismiss or for Summary Judgment. ECF. No. 27. This matter is now pending before the undersigned for a Report and Recommendation.

### I. FACTS[1]

On September 20, 2005, Petitioner was arrested by the Metropolitan Police Department in Louisville, Kentucky on several state charges.[2] ECF No. 20-1 at 2, ¶ 5. Petitioner was on parole at the time of his arrest for previous state charges and remained in the custody of the State of Kentucky after his arrest. Id. at ¶ 6. Petitioner's parole was subsequently revoked in October of 2005. Id. at 3, ¶ 7.

Petitioner was indicted on November 8, 2005, in the United States District Court for the Western District of Kentucky, Louisville Division, for Felon in Possession of a Firearm, in violation Title 18, United States Code, §§ 922(g)(1) and 924(f).[3] Id. at ¶ 8.

---

[1] The information in this section is derived from Respondent's Exhibit 1, ECF No. 20-1, Declaration of Robert C. Jennings, employed by the Federal Bureau of Prisons as a Management Analyst at the Designation and Sentence Computation Center in Grand Prairie, Texas. Mr. Jennings has access to records maintained by the BOP regarding federal inmates.

[2] This information is in connection with charges brought against Petitioner in Case No. 05CR0012917 in Louisville, Kentucky arising from incidents in September of 2005. Petitioner was charged by the state with Kidnapping-Adult; 3 counts of First Degree Wanton Endangerment; Possession of Handgun by Convicted Felon; Tampering with Physical Evidence; Intimidating a Witness; Endangering the Welfare of a Minor; and Second Degree Persistent Felony Offender.

[3] The indictment arose from the state charges in connection with his September 20, 2005 arrest.

On January 12, 2006, the United States Marshals Service (USMS) assumed "temporary custody" of Petitioner pursuant to a *Federal Writ of Habeas Corpus Ad Prosequendum* to be prosecuted for his federal charge. Id. at ¶ 9. Petitioner was released from his parole sentence on April 10, 2006, while in the temporary custody of the USMS. Id. at ¶ 10. However, a state detainer remained in place on Petitioner for the charges incurred on September 20, 2005. Id. On October 6, 2008, Petitioner was sentenced in the United States District Court for the Western District of Kentucky to a term of 180-months (15 years) imprisonment for Felon in Possession of a Firearm. Id. at ¶ 11.

On October 28, 2008, Petitioner was returned to state custody with the federal sentence lodged as a detainer. Id. at ¶ 12. On December 7, 2009, Petitioner was sentenced in the state to serve a five year term of imprisonment for his charges incurred on September 20, 2005. Id. at ¶ 13. The state ordered this sentence to run concurrent with Petitioner's federal sentence. Id. Petitioner was credited with time served from September 29, 2005, through December 7, 2009. Id. at ¶ 14. Accordingly, the state ordered that Petitioner had completed the five year sentence. Id. at ¶ 13. On December 8, 2009, Petitioner was turned back over to the USMS pursuant to the federal detainer and entered "exclusive" federal custody. Id. at ¶ 15. The only days Petitioner spent in state custody that were not credited and applied toward his state sentence were September 20, 2005 through September 28, 2005, and those days were given as credit towards Petitioner's federal sentence. Id. at ¶ 18.

The Bureau of Prisons ("BOP") prepared a sentence computation with a 180-month term of imprisonment commencing on December 8, 2009, or the day that

Petitioner entered exclusive federal custody. Id. at ¶ 16. On June 29, 2011, the Designation and Sentence Computation Center ("DSCC") received Petitioner's Administrative Remedy Appeal where he claimed his computation had been miscalculated and that his state and federal sentences should be concurrent. The DSCC interpreted Petitioner's appeal as a request to retroactively have his federal sentence run concurrently to his state sentence pursuant to a *nunc pro tunc* designation. Id. at ¶ 19-20. The BOP considered Petitioner's request in accordance with the factors provided in 18 U.S.C. § 3621 (b) and determined that such a designation was not appropriate. Id. at ¶ 21. Petitioner's projected release date, the date he will complete serving his federal sentence with consideration for good conduct time, is December 24, 2022. Id. at ¶ 17.

## II. CONTENTIONS OF THE PARTIES

### A. Petitioner's § 2241 Motion

Petitioner claims that the BOP has not properly credited him with the appropriate amount of time served for purposes of his federal sentence. ECF No. 1 Specifically, Petitioner claims that his state sentence expired while he was in federal custody. Id. Accordingly, Petitioner claims that the federal government assumed primary custody of him on April 10, 2006, alleging this to be the date that his state sentence had expired. Id. As a result, Petitioner states that he has been incarcerated for over ten years in connection with charges incurred in 2005, yet federal records indicate that as of April 29, 2016, he had only served six years and four months of his federal sentence. ECF No. 8. Therefore, Petitioner claims he is entitled to an additional four years and seven

months of "jail time credit, which accumulate to the 10 years of incarcerated time he has been held in federal custody from November 8, 2005, to present 2016." Id.

**B. Respondent's Response**

Respondent seeks dismissal of this matter, or in the alternative, summary judgment and argues that Petitioner's claims are without merit because he has received credit for all of the time spent in state custody that was not credited toward his state sentence. ECF No. 20. Respondent further argues that Petitioner's federal sentence has been correctly calculated to have commenced on December 8, 2009, the date he was released by the state to the USMS for service of his federal sentence. Id. Specifically, Respondent asserts that state authorities gained primary jurisdiction over Petitioner when he was arrested on September 20, 2005. Furthermore, while Petitioner was "borrowed" by federal authorities on January 12, 2006, pursuant to a *writ of habeas corpus ad prosequendum*, the state retained primary jurisdiction. According to Respondent, the state continued to retain primary jurisdiction over Petitioner until December 8, 2009, when he was released from his state sentence. Id. As additional support, Respondent claims that the BOP properly exercised its discretion in denying Petitioner's request for a *nunc pro tunc* designation and that Petitioner has been credited for all prior custody time to which he is entitled. Id.

**C. Petitioner's Reply**

In his reply to the Respondent's response, Petitioner maintains that his sentence has been miscalculated in so much as the BOP has failed to credit him with the proper time served. ECF No. 27. Petitioner maintains that he was under the primary jurisdiction

and exclusive custody of the federal government, asserting that the federal court had "superior jurisdiction" over the state. Id. Petitioner asserts in his reply that he does not seek an additional four years and seven months be credited, but rather, that his credited time served be adjusted to reflect "the goals of the criminal justice system" reflective of a concurrent sentence and the BOP's Program Statement regarding *nunc pro tunc* designations. Id.

### III. STANDARD OF REVIEW

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); *see also* Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts have often cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In

Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable."  Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases.  See Blackledge v. Allison, 431 U.S. 63, 80 91977).  So too, has the Fourth Circuit Court of Appeals.  Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991).  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any

material fact and the movant is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## IV. ANALYSIS

A federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). However, in some cases, a federal sentence may begin prior to the Attorney General gaining physical custody of the defendant. Where, as here, the prisoner faces both state and federal charges, the term "received in custody" is particularly important. In such instances, the concept of primary jurisdiction is applicable. Primary jurisdiction is

explained in United States v. Smith:

> In the context of successive criminal prosecutions by different sovereignties this "chief rule which preserves our two systems of courts from actual conflict of jurisdiction" means that the sovereignty which first arrests the individual acquires the right to prior exclusive jurisdiction over him,…and this plenary jurisdiction is not exhausted until there has been complete compliance with the terms of, and service of any sentence imposed by, the judgment of conviction entered against the individual by the courts of that first sovereignty…

United States v. Smith, 812 F.Supp. 368, 371 (E.D.N.Y. 1993)(quoting In re Liberatore, 574 F.2d 78 (2d Cir. 1978)).

Primary jurisdiction remains vested in a sovereign until that sovereign relinquishes its primary jurisdiction through dismissal of the charges, bail release, parole release, or satisfaction of the sentence. See Coles v. DeBoo, No. 2:10cv70, 2010 WL 3767113 (N.D.W.Va. September 27, 2010); Chambers v. Holland, 920 F.Supp. 618, 622 (M.D. Pa. 1998) *citing* United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980)("Primary jurisdiction remains vested in the state which first arrested the defendant until that jurisdiction relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence.").

However, the fact that a state prisoner is in federal court on a federal writ of habeas corpus *ad prosequendum* does not mean that the prisoner's federal sentence has commenced. "Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." Id. at 912. See also Thomas v. Whalen, 962 F.2d 358, 361 n.3 (4th Cir. 1992) ("A prisoner is not even in custody for the purposes of section 3568 when he appears in federal court pursuant to a writ *ad prosequendum*; he is merely 'on loan' to federal authorities.")

The Bureau of Prisons, on behalf of the Attorney General, is responsible for calculating federal terms of imprisonment. See United States v. Wilson, 503 U.S. 329 (1992). The BOP must follow 18 U.S.C. § 3585(b) when calculating sentences:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; *that has not been credited against another sentence*.

(emphasis added).

In Wilson, the Supreme Court held that under 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." Wilson, 503 U.S. 329 at 337. Thus, prior custody credit cannot be awarded to a prisoner if the prisoner has already received credit towards another sentence. See United States v. Brown, 977 F.2d 574 (4th Cir.1992) (Defendant may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences unless it has been credited against another sentence); United States v. Goulden, 54 F.3d 774 (4th Cir. 1995) (credit is only available for time spent in custody which has not been credited against another sentence).

In this particular case, the undersigned notes that Petitioner was in the primary custody of the State of Kentucky until his state sentence was completed and he was officially released from his sentence to the exclusive custody of the United States Marshal Service pursuant to the federal detainer that had been lodged. Petitioner was not released from the primary jurisdiction of the State of Kentucky until his state

sentence was ordered to have been completed and his obligation satisfied on December 7, 2009. Therefore, Petitioner was released from the state and entered into the primary custody of the federal government on December 8, 2009, the day he was released to the USMS for service of his federal sentence. Accordingly, December 8, 2009, is the appropriate date from which Petitioner's 180-month federal sentence commenced. As a result, except for nine days not counted toward his five year sentence for his state conviction, all the time that Petitioner spent in custody prior to December 8, 2009, was applied to his state sentence. Those remaining nine days have been subsequently applied to Petitioner's federal sentence. Therefore, all prior custody time has been accounted for. Because Petitioner cannot receive double credit, Petitioner is not entitled to any further credit against his federal sentence before December 8, 2009, the date he was released from state custody into federal detainer.

Furthermore, it is at the discretion of the BOP to designate a state prison as the appropriate place for the federal sentence to be carried out by designating it *nunc pro tunc*. The exercise of that discretion is based on several considerations by the BOP and it is not required simply because a state orders a sentence to run concurrently. While the computation center did issue a letter to Petitioner's sentencing judge seeking the Court's opinion regarding a retroactive designation for his sentences to run concurrently, no response has been received to date.[4] As such, in the absence of the federal judge making such an order, the BOP was within its discretion not to designate

---

[4] In considering Petitioner's request for a *nunc pro tunc* designation, the BOP sent a letter to his sentencing judge (Judge Simpson) on May 31, 2011, requesting his position on a retroactive designation. Ordinarily, the BOP gives the court 60 days to respond, and no response was received from the court within that time frame. (ECF No. 20-1)

the state prison *nunc pro tunc*. Accordingly, Petitioner has received the maximum credit to which he is entitled under 18 U.S.C. § 3585(b).

## V. RECOMMENDATION

Based on the foregoing, the undersigned recommends that Respondent's Motion to Dismiss or for Summary Judgment (ECF No. 19) be **GRANTED**, and Petitioner's §2241 petition  be **DENIED and DISMISSED WITHOUT PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections.  A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge.  Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied,* 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet.  The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: March 27, 2017.

                                                MICHAEL JOHN ALOI
                                                UNITED STATES MAGISTRATE JUDGE